```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
ALEXANDER SAMUEL,                         :
                                          :
                          Plaintiff,      :
                                          :   MEMORANDUM and ORDER
            - against -                   :
                                          :   07 Civ. 6321(NRB)
BELLEVUE HOSPITAL CENTER (HHC),           :
NEW YORK CITY,                            :
                                          :
                          Defendants.     :
                                          :
------------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Alexander Samuel brings this suit against his employer, Bellevue Hospital Center ("Bellevue"), and the City of New York, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964. Before the Court is defendants' motion to dismiss the complaint under Fed. R. Civ. P. 8(a)(2), Fed. R. Civ. P. 12(b)(6), and 28 U.S.C. § 1915(e).[1] For the reasons set forth below, defendants' motion is granted.

---

[1] Defendants also argue that a majority of plaintiff's claims are barred by the applicable 300-day limitations period within which a victim of employment discrimination may file a complaint with the Equal Opportunities Employment Commission. 42 U.S.C. § 2000e-5(e); see also Ford v. Bernard Fineson Development Center, 81 F.3d 304, 307 (2d Cir. 1996). Defendants note that plaintiff filed his complaint with the EEOC on November 21, 2006, which would therefore time-bar any claims arising before January 25, 2006.

1

## BACKGROUND[2]

Plaintiff has been employed at Bellevue as a Clerical Associate, level IV since March 15, 1999. Compl. 28. Plaintiff alleges that his co-workers and superiors at Bellevue created a hostile work environment and discriminated against him on the basis of his race ("Semitic, Caucasian, White Aryan"), national origin ("Juttish, Jewish, Anglo-Saxon, Hidage"), color ("White") and religion ("Jewish, Protestant, Anglican, Puritan, Separatist, Evangelical"), in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff presents a catalogue of abuses allegedly perpetrated against him by his colleagues at Bellevue. He claims that his employers unjustifiably suspended him from work, and then attempted to have him fired (id. 29); that he was denied a promotion despite the fact that he passed the relevant New York City competency tests and possessed other qualifications for the relevant senior posts (id. 33-34); that his requests for computer training were ignored, but that such training was granted to other employees (id. 43); that he received an injection from "Dr. Altman" in the allergy clinic, resulting in severe arthritis in his arms and legs (id. 29);

---

[2] These facts are primarily drawn from plaintiff's "Letter to Federal Court" ("Compl.") attached to his amended complaint, and are assumed to be true for the purposes of this motion. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).

2

that employees of the "pain tolerant clinic" maliciously stabbed him in the legs with needles and other metal implements (id. 29); that co-workers made anti-Semitic threats against him in Russian (id. 23); that one of his superiors would stand behind his desk and maliciously crush peanuts between his fingers (id. 30); that another of his superiors essentially forced employees to prostrate themselves before the mask of an African deity mounted on the wall of his office (id. 31); that reports and other documents were distributed to him covered in what appeared to be the saliva of a sick co-worker, and that plaintiff himself became ill as a result (id. 32); that other reports were given to him stained with what appeared to be blood (id. 31-32); that a co-worker played his radio at excessive volumes and listened to offensive programming (id. 32-33); that plaintiff was exposed to psychotropic substances against his will, resulting in his failure to complete a number of college courses (id. 34); that his passport and social security number were stolen at the hospital (id. 42); and that co-workers sprayed chemicals in plaintiff's workspace, but would not allow him to open the office windows in order to improve ventilation (id. 43).

Plaintiff's most detailed allegations relate to the period between 2004 and 2006, when his employers suspended him from work and attempted to have him terminated. In 2004, plaintiff alleges that he was forced to remove pictures of Presidents

George Washington and George W. Bush from his workspace, although other workers were allowed to post their own pictures and office decorations. Id. 30-31. When plaintiff replaced one of the pictures in January 2005, he claims that he was transferred to an inferior office as retaliation. Id. 31-32. He was subsequently suspended from work between September 19, 2005 and September 30, 2005, allegedly as a result of the "racism, religious and ethnic intolerance . . . [and] anti-Semitism" of his superiors. Id. 8. Plaintiff was suspended for a second time between January 29, 2006 and February 26, 2006. Id. 29.

In September 2006, Bellevue attempted to terminate plaintiff. In a hearing before an administrative law judge in December of that year, Bellevue claimed that their disciplinary actions against plaintiff were prompted by his refusal to undergo a mandatory medical evaluation, after he had frightened other members of staff and exhibited strange behavior in the office. See Health and Hospitals Corp. v. Samuel, Office of Administrative Trials and Hearings, Index No. 243/07, at 2-4 (Dec. 20, 2006). The administrative law judge agreed, but held that termination was not an appropriate remedy, and that plaintiff should only be suspended for thirty days. Id. at 7-8.

4

These allegations of employment discrimination, however, comprise only a small portion of plaintiff's complaint, which, as detailed below, consists of a vast conspiracy theory.

## DISCUSSION

### I. Legal Standards

In evaluating any motion to dismiss on the pleadings, a court must accept as true all the factual allegations included in the complaint. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Courts are particularly lenient when construing pleadings submitted by pro se litigants. Erickson v. Pardus, 127 S. Ct. 2197, 2200, ___ U.S. ___ (2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Defendants rely upon three pleading principles to support their motion to dismiss the complaint. These principles are described seriatim.

First, Rule 8(a)(2) provides that a complaint shall contain a "short and plain statement" showing that he is entitled to relief, and which provides a defendant with fair notice of the nature of the claim against him. See Swierkiewicz v. Sorema N.A., 524 U.S. 506, 512 (2002). Where claims are conclusory or speculative, the Second Circuit has established a flexible "plausibility standard" to determine whether a plaintiff's claims meet the pleading requirements of Rule 8(a)(2): "a pleader [must] amplify a claim with some factual allegations in

those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, ___ U.S. ___ (2007))(emphasis in original), cert. granted, 76 U.S.L.W. 3654 (U.S. June 16, 2008)(No. 07-1015). Nonetheless, "[d]ismissal [under Rule 8(a)(2)] . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

Second, under Rule 12(b)(6), a court "may dismiss a complaint [] if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). While "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," Neitzke v. Williams, 490 U.S. 319, 327 (1989), the allegations must be legally sufficient to state a cause of action.

Third and finally, because plaintiff proceeds in forma pauperis, his pleading must meet the requirements set forth in 28 U.S.C. § 1915(e). This statute -- aimed at ensuring that the privileges granted to indigent litigants are not abused, 28 U.S.C. § 1915(e)(2)(B)(i) -- authorizes a court to dismiss

6

claims raised by such litigants sua sponte when it finds those claims to be "frivolous or malicious." Unlike Rule 12(b)(6), where the disbelief of a judge is explicitly not an adequate ground for dismissal, Section 1915(e)(2)(B)(i) grants a judge "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. Dismissal is appropriate "where . . . the allegations of the complaint are beyond credulity . . . or there is little chance of success on the merits in light of various defenses which may be asserted." Anderson v. Coughlin, 700 F.2d 37, 43 (2d Cir. 1983)(internal quotation marks omitted).

## II. Claims Unrelated to Plaintiff's Employment at Bellevue

Plaintiff's forty-five page amended complaint spends fewer than ten pages dealing with the alleged abuses that he suffered at the hands of his employer. The remainder of the document is devoted to his account of a criminal conspiracy against him, orchestrated by former President Bill Clinton, former New York Mayor Rudy Giuliani, the Roman Catholic Church, the Long Island University College of Pharmacy, and unidentified employees of CBS Broadcasting, among others.[3] Compl. 3. To the extent that

---

[3] As part of this theory, plaintiff claims to be a descendant of Jesus Christ, Nicholas II of Russia, and Elizabeth I of England. Compl. 6-7. Plaintiff also claims to have been crowned Tsar of all Russia at the age of three, and thus to be the rightful heir to the "multi-billion assets of Imperial families of Russia [sic]." Id. 7.

7

plaintiff attempts to tie his conspiracy story to what is alleged to have occurred inside of the hospital, this aspect of the complaint is dismissed for failing to conform to the requirements of Fed. R. Civ. P. 8(a)(2) and Rule 12(b)(6),[4] and as "frivolous" as the term is utilized under 28 U.S.C. § 1915(e).

### III. Claims Relating to Plaintiff's Employment at Bellevue

#### A. Implausible Claims

Under Rule 8(a)(2) and the Second Circuit's opinion in Iqbal, speculative or conclusory claims included in a complaint must be supported by sufficient factual allegations to render them plausible, and to inform a defendant of the accusations brought against him. 490 F.3d at 157-58. While some of plaintiff's claims -- such as his allegation that he was unfairly suspended from work -- are pleaded in sufficient factual detail to meet this standard, other claims are not accompanied by the requisite factual supports. For example, plaintiff's claims that he was subjected to physical abuse in the "pain tolerant clinic," and his more general allegation of "mind control," and involuntary exposure to psychotropic substances have no factual support. Compl. 28-29. It is

---

As a result of his ethnic and religious ancestry, plaintiff believes his is being persecuted by Mossad (the Israeli Intelligence Service), the Catholic Church, and the Russian government, among others. Id. 6-10.

[4] See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993).

8

unclear exactly when these events are supposed to have occurred, and the alleged perpetrators are also not identified by name. Bellevue has not been given sufficient notice of the charges against it with respect to such claims, and has not been granted a fair opportunity to defend itself against these vague assertions. Therefore, these claims are dismissed.

### B. Remaining Claims

After discounting those claims related to plaintiff's conspiracy theory, and those claims pleaded with insufficient detail to meet the requirements of Rule 8, it must be determined whether there remain any potentially viable claims of employment discrimination. At the pleading stage of a Title VII suit, a plaintiff's allegations that the adverse employment actions he suffered are linked to his membership in a protected class are usually credited. See Swierkiewicz, 534 U.S. at 509-11; see also O'Neal v. State University of New York, Health Science Center Brooklyn, No. 01 Civ. 7802 (DGT), 2003 WL 1524664, at *8 (E.D.N.Y. Mar. 24, 2003). However, in a case brought by an indigent plaintiff, 28 U.S.C. § 1915(e) heightens the pleading standard, and directs courts to dismiss claims when that are either "beyond credulity" or have "little chance of success on the merits in light of various defenses which may be asserted." Anderson, 700 F.2d at 43. In this case, a careful parsing of the complaint demonstrates that plaintiff's allegations of

9

mistreatment at Bellevue are "frivolous" as that term is utilized and applied under § 1915(e).

In reaching this conclusion, the burden shifting framework for Title VII claims set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is relevant because it reveals the likelihood (or lack thereof) that plaintiff's claims would survive a motion for summary judgment. Under McDonnell Douglas, if a plaintiff is able to make a prima facie showing of discrimination, the burden of proof shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action suffered by the plaintiff. 411 U.S. at 802. If a defendant is able to provide such a reason, it will prevail, unless the plaintiff is able to rebut the showing by a preponderance of the evidence. Id. at 804-05.

In this case, there is substantial doubt that plaintiff would be able to make a prima facie showing at the summary judgment stage. Plaintiff's only basis for arguing that his co-workers and superiors mistreated him on account of his religious or racial characteristics is his description of the international conspiracy against him. The complaint does not provide a clear link between his overall theory and his treatment at Bellevue that would render credible plaintiff's claim that his negative employment experiences were the result of discrimination. Cf. McMichael v. Henderson, No. 99-4262,

2000 WL 1140755, at *1 (6th Cir. Aug. 8, 2000)(affirming the dismissal of a complaint pursuant to 28 U.S.C. § 1915(e) for failure to make a prima facie showing of discrimination under the McDonnell Douglas standard).

Even assuming that plaintiff could make a prima facie showing of discrimination, it is already clear that Bellevue would have little difficulty in justifying its conduct with legitimate non-discriminatory reasons. Records from proceedings before an administrative law judge show that Bellevue suspended plaintiff and attempted to have him terminated because of his insubordination, and not as a result any racial, ethnic, or religious animus. See Health and Hospitals Corp. v. Samuel, Office of Administrative Trials and Hearings Index No. 243/07, at 3-7 (Dec. 20, 2006). Plaintiff's behavior in the office, as reflected in the hearing record,[5] would also serve as grounds for Bellevue's refusal to promote him (and would explain the alleged hostility of his co-workers).

Faced with this defense, plaintiff would bear the burden of rebutting defendant's evidence. Given that the complaint's

---

[5] Among other things, plaintiff would (1) shut off the air conditioning in the office during the summer, and refused to close the windows in the winter, resulting in uncomfortable working conditions for his fellow employees; (2) carry luggage around with him constantly, despite requests from his superiors not to do so; (3) accuse his colleagues of treason; and (4) complain when given assignments. Health and Hospitals Corp. v. Samuel, Office of Administrative Trials and Hearings Index No. 243/07, at 2-3 (Dec. 20, 2006).

11

conclusory assertions do not provide any evidentiary basis for a claim of disparate treatment, it is clear that plaintiff would not be successful. Therefore, all of plaintiff's claims relating to his employment are dismissed under 28 U.S.C. § 1915(e).[6] See Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also Anderson, 700 F.2d at 43.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:    New York, New York
          August 21, 2008

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[6] In addition, for the reasons stated above, granting plaintiff leave to re-plead would be futile. See Sleigh v. Charlex, Inc., No. 03 Civ. 1369 (MBM), 2004 WL 2126742, at *8 (S.D.N.Y. Sep. 14, 2004).

Copies of the foregoing Order have been mailed on this date to the following:

**Plaintiff**
Alexander Samuel
Apartment 3D
1360 Ocean Avenue
Brooklyn, NY 11230

**Attorneys for Defendant**
Christopher Lee Heer, Esq.
New York City Law Department
100 Church Street
New York, NY 10007